## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Courtney Cicero | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:24-cv-04286 |
| | ) | |
| Total Quality Logistics, LLC, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Courtney Cicero ("Plaintiff"), by her attorneys, files this Complaint against the Defendant, Total Quality Logistics, LLC ("Defendant" or "TQL"), and alleges as follows:

1. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et seq. and the Pregnancy Discrimination Act amendment for damages based on an unlawful employment practice committed by TQL.

2. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5. This court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

4. Defendant TQL is an Ohio corporation with its principal place of business in Cincinnati, Ohio and does business throughout the United States, including Ohio and this judicial district.

5. Defendant is an employer engaged in an industry that affects commerce and employs more than 15 employees qualifying as an "employer" for the purposes of Title VII under 42 U.S.C.A. § 2000e(b).

1

6. All conditions precedent to jurisdiction have occurred or been complied with under 42 U.S.C.A. §§ 2000e-5 generally: a charge of employment discrimination was filed with the Equal Employment Opportunity Commission within 180 days of the unlawful employment practice; a Notification of a Right to Sue was received on February 23, 2024; and this complaint has been filed within 90 days of the receipt of such Notice under § 2000e-5(f)(1). Ex. A.

7. Defendant hired Plaintiff on October 4, 2021, in the position of Logistics Account Executive.

8. Throughout her tenure at TQL, Cicero received positive evaluations and was known among her peers and supervisors for her reliability and high-quality work.

9. On or about April 2022, Plaintiff became aware that she was pregnant and notified her employer on or about August 2022.

10. During Cicero's pregnancy, she experienced complications that required certain medical accommodations, including periodic rest, flexibility in her work schedule, and physical adjustments to her workspace.

11. Cicero informed her supervisors of her pregnancy and the associated complications and provided all necessary medical documentation, which followed TQL's protocols for requesting accommodations.

12. Cicero was assured by her supervisors, Ronnie Boggs and Alex Beres that she would be allowed a 60-minute grace period for her tardiness based on her pregnancy-related medical conditions.

13. Cicero's requests for accommodations were met with resistance and undue scrutiny.

14. Despite this assurance, after a meeting she was not present for, Cicero was written up for tardiness without prior notice.

15. On September 13, 2022, Cicero filed a claim with the EEOC regarding unfair tardiness policies.

16. On September 14, 2022, the accommodation from Cicero's doctor was submitted to TQL.

17. On or about September 18, 2022, Cicero submitted her request to take maternity leave following the appropriate company protocol.

18. On September 19, 2022, Cicero was summoned to a meeting with her supervisors, Kim Pein ("Pein") and Alex Beres ("Beres"), to discuss her accommodation needs.

19. Instead, the discussion shifted to her performance, which had never been an issue before.

20. On or about September 22, 2022, Cicero submitted a formal request for a short-term accommodation of a 12-week modified schedule to address her pregnancy-related health issues.

21. The request was documented and submitted through TQL's official "Request for Accommodation" form.

22. On October 24, 2022, Cicero was put on a performance improvement plan ("PIP"), even though she was not underperforming then.

23. This PIP program is designed to allow TQL to terminate employees after four weeks.

24. TQL treated pregnant employees, like Cicero, differently than employees with other medical conditions/disabilities by providing non-pregnant employees with more favorable accommodations or not scrutinizing non-pregnant employees as harshly as pregnant employees or putting them on arbitrary performance improvement plans ("PIPs").

25. Specifically, between the time of the write-up and when she brought an official doctor's note allowing her an extra 60 minutes to arrive at work, Cicero witnessed multiple colleagues arriving late without consequence.

26. Cicero made a concerted effort to improve her call numbers from September 2022 to October 2022.

27. Even her supervisor, Beres, acknowledged her efforts in writing.



28. On October 7, 2022, Cicero was one of only 5 employees (on a team of 16) who achieved the 64 call-per-day goal, with the second highest number of calls.

29. Despite her documented performance improvements and adherence to performance goals, including being one of only five employees to meet a rigorous call target in October 2022, Cicero experienced immense pressure and emotional distress from feeling targeted after announcing her pregnancy, which was only compounded by her pregnancy-related medical conditions.

30. On October 28, 2022, Cicero filed an EEOC charge alleging pregnancy discrimination and retaliation.

4

31. On or about November 8, 2022, Cicero was accused of allegedly making "ghost calls" to manipulate her phone activity.

32. When questioned, Cicero denied the allegations and explained that she might have experienced a technical issue with her phone.

33. On November 8, 2022, without investigating the matter, TQL terminated Cicero.

34. Cicero was 34 weeks pregnant and due to give birth in six (6) weeks when she was terminated.

35. Defendant's reason for firing Cicero was pretextual because she had reported a legitimate technical issue with her company-provided telephone, as she could not hear when prospective clients picked up the phone.

36. After Defendant terminated Cicero, she requested information about obtaining COBRA coverage from human resources or Pein.

37. Pein failed to provide Cicero with the COBRA paperwork.

38. Consequently, Cicero was forced to navigate and secure her COBRA coverage on her own, which she was able to finalize only the day before her scheduled C-section.

39. Cicero's termination had a profound effect on her personal and financial well-being, occurring just as she was preparing for the birth of her child, thereby stripping her of her health insurance and income at a critical time.

**COUNT I – Discrimination Based on Pregnancy in Violation of Title VII of the Civil Rights Act (42 U.S.C. §§ 2000e et seq.) as Amended by the Pregnancy Discrimination Act.**

40. Cicero repeats and realleges the aforementioned paragraphs as if fully set forth herein.

41. By the conduct described above, Defendant acting by and through its agents during the course of and within the scope of their employment, intentionally discriminated against Plaintiff because of her pregnancy, in violation of Title VII.

5

42. Cicero was qualified for her position and was 34 weeks pregnant and suffered from the aforementioned medical conditions related to her pregnancy when Defendant fired her.

43. Defendant intentionally violated Cicero's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

44. Cicero suffered damages because of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, humiliation, inconvenience, pain and suffering, loss of enjoyment of life, and the costs of bringing this action.

WHEREFORE, Plaintiff, Courtney Cicero, asks this Court to enter judgment in her favor and against Defendant, TQL, as follows:

a) that a finding be entered that Defendant intentionally discriminated against Plaintiff in violation of Title VII;

b) that Plaintiff be awarded the wages, benefits, and other compensation due to her as a result of Defendant's acts of discrimination;

c) that Plaintiff be reinstated to her position if such a position no longer exists, to a level and compensation comparable to that of staff attorney; if such a position is unavailable, Plaintiff prays that she be awarded front pay in lieu of reinstatement;

d) that Plaintiff be awarded compensatory and punitive damages;

e) that Plaintiff be awarded prejudgment interest;

f) that Plaintiff be awarded attorney's fees and costs; and

g) that Plaintiff be awarded such other relief as this Court may deem just and proper.

**COUNT II – Retaliation in Violation of Title VII of the Civil Rights Act (42 U.S.C. §§ 2000e et seq.) as Amended by the Pregnancy Discrimination Act.**

45. Cicero repeats and realleges the aforementioned paragraphs as if fully set forth herein.

46. Cicero was qualified for her position and was pregnant and suffered from a medical condition related to her pregnancy when Defendant fired her.

47. Cicero engaged in protected activity by filing two claims with the EEOC regarding the aforementioned unfair tardiness policies and disparate treatment.

48. Cicero also provided the necessary medical documentation to request an accommodation based on her pregnancy and pregnancy-related medical conditions.

49. Cicero also provided notice of her maternity leave right before she was put on a PIP.

50. Only 11 days after Cicero complained of pregnancy discrimination, Defendant summarily fired Cicero on November 8, 2022, when she was 34 weeks and visibly pregnant.

51. Defendant terminated Cicero based on vague allegations of "ghost calling."

52. Defendant's stated reason for terminating Cicero's employment is pretextual and baseless.

53. Defendant fired Cicero because she complained of pregnancy discrimination.

54. Cicero suffered damages because of the Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

55. Defendant intentionally violated Cicero's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

56. Cicero suffered damages because of the Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

WHEREFORE, Plaintiff, Courtney Cicero, asks this Court to enter judgment in her favor and against Defendant, TQL, as follows:

a) that a finding be entered that TQL intentionally discriminated against Cicero in violation of Title VII;

b) that Plaintiff be awarded the wages, benefits, and other compensation due to her as a result of Defendant's acts of discrimination;

c) that Plaintiff be reinstated to her position if such a position no longer exists, to a level and compensation comparable to that of staff attorney; if such a position is unavailable, Plaintiff prays that she be awarded front pay in lieu of reinstatement;

d) that Plaintiff be awarded compensatory and punitive damages;

e) that Plaintiff be awarded prejudgment interest;

f) that Plaintiff be awarded attorney's fees and costs; and

g) that Plaintiff be awarded such other relief as this Court may deem just and proper.

### COUNT III – Intentional Infliction of Emotional Distress

57. Cicero repeats and realleges the aforementioned paragraphs as if fully set forth herein.

58. Defendant's conduct was extreme, outrageous and punitive.

59. Defendant knew or should have known that Cicero was particularly susceptible to emotional distress on the day it terminated her because:

a) Cicero was pregnant.

b) Defendant until Cicero was 34 weeks pregnant and showing the physical signs of pregnancy before it terminated her.

c) By waiting until Cicero was in her final weeks of pregnancy, Defendant knew or should have known that she would be unable to obtain alternative employment since most employers are unwilling to hire female employees in the later stages of pregnancy.

60. TQL knew or should have known that, even if Cicero were able to find alternative employment, she would not qualify for leave with her new employer under the Family and Medical Leave Act of 1993 ("FMLA"), insurance benefits, or short-term disability before she gave birth.

61. Defendant knew that Cicero would lose her insurance coverage when it terminated her.

62. TQL deliberately did not send Cicero the requisite COBRA insurance information, forcing Cicero to investigate her coverage up until the day before her scheduled Cesarean section.

63. Defendant never suggested it had any problems with Cicero's performance before she announced her request for a pregnancy-related accommodation.

64. Defendant's extreme and outrageous course of conduct was made with the intent to cause Cicero severe and extreme emotional distress or with reckless disregard as to whether such conduct would cause Cicero severe emotional distress.

65. Defendant's conduct did cause Cicero severe emotional distress. The distress manifested itself in the form of, severe distress during the final weeks of pregnancy following her termination.

66. Defendant's outrageous conduct jeopardized the health of Cicero and her unborn baby.

WHEREFORE Plaintiff, Courtney Cicero, asks this Court to enter judgment in her favor and against Defendant, as follows:

a) that a finding be entered that Defendant engaged in extreme and outrageous conduct with the intent of causing Plaintiff severe emotional distress or with reckless disregard as to whether such conduct would cause Plaintiff severe emotional distress;

b) that a finding be entered that Defendants actions have caused Plaintiff to suffer severe emotional distress;

c) that Plaintiff be awarded compensatory and punitive damages;

d) that Plaintiff be awarded such other relief as this Court may deem just and proper.

## COMMON PRAYER FOR RELIEF

WHEREFORE, and that there is sought, Plaintiff, Deborah Wilson, prays that this Court:

a) Conduct a mediated settlement conference or refer the case to its court-annexed mediation program to assist the parties in bringing about a settlement of this case;

b) Enter judgment in the Plaintiff's favor and against Defendant;

c) Order affirmative relief necessary to eradicate the effects of the Defendant's unlawful employment practices;

d) Award the Plaintiff actual damages suffered to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendant's conduct;

e) Award the Plaintiff compensatory damages to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendant's conduct;

f) Award the Plaintiff prejudgment interest on these damages;

g) Grant court costs and reasonable attorneys' fees under 42 U.S.C. § 1988, § 2000(e), and other applicable law; and,

h) Grant additional relief as the Court deems just and proper under the circumstances.

## **JURY DEMAND**

67. Plaintiff, Courtney Cicero, demands a trial by jury on all issues so triable.

Respectfully submitted,

Courtney Cicero

s/ Gianna Basile

Attorney for Plaintiff

GB Law
Gianna Scatchell Basile
1821 W Hubbard Street, #209
Chicago, Illinois 60622
(312) 2483303
gb@lawfirm.gs